**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ASCENTIVE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC.,<br><br>Defendant. | Civil Action No. 2:09-cv-02871 |

**DECLARATION OF ADAM SCHRAN**

I, Adam Schran, declare:

1. I am the chief executive officer of Ascentive, LLC ("Ascentive"), plaintiff in the above-captioned action. I submit this declaration in support of Ascentive's motion for preliminary injunction. This declaration is based upon personal knowledge.

**Ascentive's Software Products and Intellectual Property**

2. Ascentive develops and sells computer software products that enhance and protect personal computers, including improving system performance, increasing speed, ensuring privacy, and eliminating the threat of spyware.

3. Over the past decade, Ascentive has developed a reputation as a leader in the personal computer software industry. Ascentive has marketed more than a dozen computer software products, receiving accolades from media outlets such as *The Wall Street Journal*, *Newsweek*, *Forbes*, Tech TV and NBC.

4. Ascentive is the owner of an invention relating to potential counterterrorism technology for which an application for a United States Patent has been filed. This application

has been accorded "special" status and expedited review by the U.S. Patent and Trademark Office ("U.S.P.T.O."). In addition, Ascentive is the assignee of three additional pending U.S. patent applications, one of which has been allowed by the Patent Examiner and consequently a granted patent is expected within approximately three to four months.

5. Ascentive owns registrations for the following trademarks, which it uses in connection with its computer software products:

WEBROCKET - Reg. No. 2,510,313 (issued Nov. 20, 2001)
LIFE AT THE SPEED OF LIGHT - Reg. No. 2,757,848 (issued Sept. 2, 2003)
ASCENTIVE - Reg. No. 3,091,824 (issued May 16, 2006)
FINALLYFAST.COM - Reg. No. 3,533,775 (issued Nov. 18, 2008)
FASTATLAST.COM - Reg. No. 3,580,255 (issued Feb. 24, 2009)
PC SPEEDSCAN - Reg. No. 3,580,254 (issued Feb. 24, 2009)
SPYWARE STRIKER - Reg. No. 3,580,253 (issued Feb. 24, 2009)
PC SCAN & SWEEP - Reg. No. 3,580,252 (issued Feb. 24, 2009)
ACTIVESPEED - Reg. No. 3,580,251 (issued Feb. 24, 2009)
WATCH-BY-WEB – Reg. No. 3,646,800 (issued June 30, 2009)
RAMROCKET – Reg. No. 3,646,763 (issued June 30, 2009)
WINROCKET – Reg. No. 3,646,783 (issued June 30, 2009)
GREENLIGHT GUARDIAN – Reg. No. 3,646,792 (issued June 30, 2009)

Ascentive also owns trademark applications for the following trademarks:

FINALLYFAST – App. No. 77681970 (filed Mar. 3, 2009)
FINALLY FAST – App. No. 77681963 (filed Mar. 3, 2009)
BEAWARE – App. No. 77625343 (filed Dec. 3, 2008)

Records of these registrations and applications are attached to Ascentive's complaint as Exhibit A.

6. Ascentive is a Microsoft-certified partner. Google lists Ascentive's websites on Google's Safe Browsing Diagnostic pages as hosting safe software, not malicious software or "malware." Google states that Ascentive's websites have no warnings.

7. Ascentive operates a number of websites where its computer software products are advertised, sold, and made available for download, including:

www.ascentive.com
www.finallyfast.com
www.fastatlast.com
www.pcfinallyfast.com
www.scanyourpc.com
www.pcspeedscan.com
www.greenlightguardian.com
www.activespeed.com
www.ramrocket.com
www.winrocket.com
www.beaware.com

8. Ascentive's FinallyFast software provides customers with a "Free PC Scan" that identifies ways to improve computer performance. Customers that download the software and wish to buy additional features can do so for $29.95.

9. In 2008, Ascentive derived approximately 99 percent of its revenues from online sales from its websites.

**Ascentive's Investment in Advertising**

10. Ascentive's revenues are primarily derived from online sales, and Ascentive invests heavily in online marketing.

11. Ascentive began participating in Google's AdWords program in December 2003, and participated continuously in the program until on or about February 27, 2009.

12. In 2008, Ascentive paid Google more than $645,000.00 to participate in Google's AdWords program.

13. To supplement its online advertising, Ascentive develops and airs television advertisements that encourage consumers to search for its software products online by brand name, and to subsequently buy and download these products. Ascentive spends millions of dollars on these ads.

14. For example, Ascentive airs television advertisements for its FinallyFast software. These advertisements include the phrases: "FinallyFast.com Free Performance Test", "My Computer is Fast, Finally," and "If your brand new computer isn't as fast as it ought to be...".

15. Ascentive views advertising on Google as particularly crucial, as the vast majority of internet users searching for Ascentive's products by brand name search for these products through Google and view the natural search listings and advertisements Google displays in response to their search queries.

16. Some internet browsers I am familiar with are designed to filter website addresses through Google. Thus, even if an internet user attempts to visit Ascentive's websites directly, by typing a website address such as "www.finallyfast.com" into the internet browser, the internet user's browser may be designed to display Google results to the internet user instead of taking the person directly to Ascentive's website.

17. When internet users enter search terms at www.google.com, these search terms are treated as "keywords" that trigger the display of certain Google advertisements or "Sponsored Links" along with Google's search results. Customers are directed to the third-party advertisers' websites when they click on these advertisements contained within Google's search results.

18. Google's AdWords advertisers compensate Google based upon the amount of customer traffic the ads generate.

19. Google's advertisers have in the past decided to run advertisements under Google's Sponsored Links that use the same text as Ascentive's advertisements for its "FinallyFast" software. The advertiser can refer to "FinallyFast" software in the Google Sponsored Link ad text and make the ad appear to direct consumers to the website www.finallyfast.com, i.e., Ascentive's website.

20. The Google ad actually may direct customers to a website operated by the advertiser, such as www.finallyfastagain.com, www.finallyfast.us, or www.finally-fast-pc.com. Once the customer arrives at the website as a result of the misleading Google ad for "FinallyFast" software, the customer may be prompted to buy and download software labeled as "FinallyFast" software, although that software is completely unlike the software developed and sold by Ascentive. This competing software may in fact harm the internet user's computer, and be confused with the software of Ascentive.

21. Google solicits keyword bids from third party advertisers, and since 2008, more than 100 third-party Google advertisers bid on Ascentive's trademarks.

**Ascentive's Investment in Protecting its Trademarks and Reputation Online**

22. Ascentive attempted to obtain assistance from Google to prevent trademark infringement many times, but Google refused to curtail its advertisers' use of Ascentive's trademarks as keywords and its advertisers' use of Ascentive's trademarks in the text of Google advertisements.

23. Ascentive submitted numerous complaints to Google regarding the misuse of its trademarks in Google's AdWords program. Many of these communications occurred in late 2008 and early 2009. True and correct copies of emails between Ascentive representatives and Google, with account numbers redacted, are attached as Exhibits A-E.

24. For example, on January 30, 2009, Ascentive contacted Google regarding an advertiser displaying the website address "ascentive.updatespc.com" in its Google ad text, indicating to internet users that the link would take the user to the website address or "URL" "ascentive.updatespc.com." Ex. A.

25. The search keyword "ASCENTIVE" triggered this advertisement.

26. Google refused to remove the ad, stating, "[W]e do not investigate URLs as part of our complaint procedure. This is because the use of a URL does not necessarily constitute trademark use, particularly in the case of post-domain paths or subdomains." Ex. A.

27. On March 2, 2009, Ascentive contacted Google to seek the removal of an advertisement purporting to offer "Finally Fast" software, the same "Free Trial" Ascentive offers, and the same "Finally Fast" software "Seen on TV." In the complaint, Ascentive noted its trademark registration for "FINALLYFAST.COM". The objectionable ad text stated:

> Finally Fast – Seen on TV
> Fix Annoying PC Errors Quickly!
> Get a Fact Pc in 3 min – Free Trial
> <u>www.FinallyFastAgain.com</u>

Ex. D. Additional printouts of this ad are attached as Ex. F.

28. The keywords "FINALLYFAST.COM" and "FINALLYFAST" triggered this advertisement through Google's advertising program. Ex. F. The website FinallyFastAgain.com offered customers software labeled as "FinallyFast" software, and prompted customers to download the software. The software, however, was not affiliated in any way with Ascentive.

29. Google also refused to take action to remove this ad, stating: "As previously noted, we will not be able to investigate 'finally fast' at this time because this mark differs too greatly from your actual trademark." Ex. D.

30. Although Ascentive received no assistance from Google, beginning in 2008, Ascentive directly contacted third-party advertisers and, in many cases, succeeded in removing numerous infringing Google advertisements.

31. Ascentive aggressively combated trademark infringement by contacting third-party Google advertisers located around the world, so as to remove these advertisements and to protect Ascentive's trademarks, reputation and online image.

32. Contacting and prosecuting each Google advertiser that caused an infringing advertisement to appear, on an ongoing basis, however, was more time consuming and costly than receiving assistance from Google would have been. This is particularly true in the case of third party advertisers located overseas actively trying to conceal their identities.

33. The removal of these Sponsored Link advertisements increased Ascentive's revenues and traffic to its websites, while protecting its trademarks and reputation.

34. As Ascentive caused infringing Sponsored Links to be removed, fewer and fewer Sponsored Links appeared in response to searches for Ascentive's trademarks. This resulted in decreased profits for Google.

35. This increased web traffic to Ascentive's websites continued until Google permanently suspended Ascentive from Google's AdWords program.

36. On or about February 27, 2009, Google suddenly and without identifying any reason suspended Ascentive's AdWords accounts and refused to run any advertisements paid for by Ascentive.

37. In addition to suspending Ascentive's AdWords account, on or about March 4, 2009, Google ceased including some of Ascentive's websites in Google's natural search listings.

38. As a result of this suspension and blocking, Ascentive suffered a severe drop in online sales. The number of visitors to Ascentive's website www.finallyfast.com, for example, dropped from approximately 1.9 million visitors per month in January 2009, to approximately 500,000 visitors per month.

39. Ascentive's records of its website visitor traffic show that Ascentive suffered an immediate loss of ten percent of its recorded internet traffic following Google's ban of Ascentive's websites from Google's natural search listings and Google's advertising programs.

40. Prospective customers' ability to find Ascentive's websites was so impaired that many of Ascentive's marketing efforts became uneconomical. Even customers searching online and intending to buy Ascentive's products in response to Ascentive's marketing efforts could not locate Ascentive's products, and Ascentive was forced to cease some of its advertising as a result, causing a further drop in traffic beyond the initial ten percent drop and causing a further loss of profits to Ascentive.

**Ascentive's Communications with Google**

41. Between February 27, 2009, and May 2009, Ascentive repeatedly contacted Google to inquire about the reason for the suspension of its AdWords account and to try and persuade Google to revoke the suspension.

42. On March 9, 2009, Google responded:

> Unfortunately, we will not be reversing our decision regarding the suspension of your account. Please respect our decision and as noted in our Terms and Conditions, Google reserves the right to terminate advertisements for any reason.

True and correct copies of correspondence between Ascentive's representatives and Google is attached as Exhibit G.

43. Ascentive speculated that Google may have suspended its account due to a dispute with a third party - the operators of the website StopBadware.org - regarding the features of one of Ascentive's software programs and allegations that Ascentive's software programs constituted malware. Malware is malicious software harmful to computers and at no time did any of Ascentive's software products constitute "malware."

44. Between March and May 2009, Ascentive communicated with and successfully resolved the dispute with StopBadware.org. The result was that Ascentive made alterations to its software and its software was removed from the StopBadware.org website. Despite these developments, Google refused to revoke the suspension.

45. On April 28, 2009, Google responded:

> As mentioned in our previous email, your Google AdWords account has been suspended due to multiple policy disapprovals. We are unable to revoke your account suspension, and we will not accept advertisements from you in the future.
>
> Please note that our support team is unable to help you with this issue, and we ask that you do not contact them about this matter.

Ex. G.

46. Although Google stated that the suspension was due to "multiple policy disapprovals," Google never identified any Google policy Ascentive purportedly violated. Ex. G.

47. Ascentive also contacted Google repeatedly regarding Google's failure to include Ascentive's websites in natural search listings. Google, however, provided no reason for this failure nor did it change its conduct in response to Ascentive's communications. Ex. G.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Adam Schran
Adam Schran

Executed on July 24, 2009